JOHNSON v HURLEY MEDICAL GROUP, PC

Docket No. 262143. Submitted September 14, 2005, at Detroit. Decided April 13, 2006, at 9:05 a.m.

Thelma Johnson, as personal representative of the estate of her deceased husband, Carl Johnson, brought an action in the Genesee Circuit Court against Hurley Medical Group, P.C.; Dr. Moongilmadugu Inba-Vazhvu; and Dr. Kenneth Jordan, alleging and seeking damages for the wrongful death of the decedent from medical malpractice. The plaintiff served the notice of intent to sue on the defendants within two years of the date of her appointment as personal representative, as required by MCL 600.2912b, but did not file the suit within that two-year period. After the stipulated dismissal of Dr. Jordan from the action, the court, Robert M. Ransom, J., granted summary disposition for the defendants, ruling that the action was barred by the two-year statute of limitations for medical malpractice actions. The plaintiff appealed, arguing that the action is timely under the three-year ceiling of the wrongful death saving provision, MCL 600.5852.

The Court of Appeals *held*:

Equity demands the application of judicial tolling in this case. The plaintiff was required under MCL 600.2912 to file the notice of intent to sue and also relied on *Omelenchuk v Warren*, 461 Mich 567 (2000) (which was clarified and overruled in part in *Waltz v Wyse*, 469 Mich 642 [2004], after this action was brought), in filing her claim when she did. Whether *Waltz* ought to be applied prospectively or retroactively will be determined by a conflict panel, but that future decision is not relevant given the decision to apply equitable or judicial tolling in this case.

Reversed and remanded for further proceedings.

O'CONNELL, J., concurring in the result only, stated that, in accord with *Pohutski v City of Allen Park*, 465 Mich 675 (2002), although the general rule is that judicial decisions are given full retroactive effective, a more flexible approach is warranted where injustice might result from full retroactivity. The level of confusion and imprecise language surrounding the issue justifies the application of that flexible approach to provide for the prospective, not retroactive application of *Waltz*.

*Gittleman, Paskel, Tashman & Walker, P.C.* (by *Michael S. Tashman*), for Thelma Johnson.

*Smith, Martin, Powers & Knier, P.C.* (by *Jonathan C. Martin*), and *Hackney, Grover, Hoover & Bean, PLC* (by *Marcy R. Matson*), for Moongilmadugu Inba-Vazhvu.

*Portnoy & Roth, P.C.* (by *Robert P. Roth* and *Marc S. Berlin*), for Hurley Medical Group, P.C.

Before: FORT HOOD, P.J., and WHITE and O'CONNELL, JJ.

PER CURIAM. In this wrongful death, medical malpractice action, plaintiff appeals as of right a circuit court order granting summary disposition for defendants Hurley Medical Group, P.C., doing business as Hurley Medical Center; and Dr. Moongilmadugu Inba-Vazhvu. The circuit court found plaintiff's complaint time-barred and granted summary disposition under MCR 2.116(C)(7). We reverse.

I

Plaintiff's decedent, Carl Johnson, went to Hurley Medical Center's emergency room in Flint at approximately 2:40 p.m. on November 22, 1997, and related complaints of chest pain that extended to his arms during the previous four to five months, as well as shortness of breath. Johnson's medical history included high cholesterol, hypertension, and smoking. The medical center admitted Johnson, and Dr. Kenneth Jordan and other doctors treated Johnson until they discharged him shortly before 3:00 p.m. on November 23, 1997. According to the complaint, Johnson received "instructions to continue Zestril, Dyazid and . . . Fenoprophen and to maintain a low salt, low cholesterol and

low sugar diet." Johnson also was advised to visit his primary physician, Dr. Jordan, within the next week and to see Dr. Inba-Vazhvu for a stress test.

Plaintiff's complaint alleges that on November 26, 1997, Dr. Inba-Vazhvu examined Johnson and scheduled a stress test for the next week, but "did not perform . . . any other diagnostic tests to evaluate and/or determine the cause/source of [Johnson's] chest pain. Further, Dr. Inba-Vashvu [sic] did not administer appropriate medical therapy to prevent myocardial infarction" and did not order "restrictions on [Johnson's] activities . . . ." In the evening of November 26, 1997, Johnson died from a massive heart attack. After receiving letters of authority appointing her as personal representative of Johnson's estate on July 31, 1998, plaintiff, Johnson's widow, gave defendants notice of her intent to pursue medical malpractice claims on July 17, 2000, and filed this medical malpractice action on December 22, 2000.

Dr. Inba-Vazhvu moved for summary disposition pursuant to MCR 2.116(C)(7) (period of limitations) and (10), arguing that plaintiff failed to commence the action within the two-year medical malpractice period of limitations, which expired by November 26, 1999, the second anniversary of the decedent's death, and, although plaintiff gave defendants notice of her intent to commence a medical malpractice action as required by MCL 600.2912b on July 17, 2000, within two years of her appointment as personal representative, the Supreme Court in *Waltz v Wyse*, 469 Mich 642, 655; 677 NW2d 813 (2004), held that the filing of a medical malpractice notice does not operate to toll the wrongful death saving period under MCL 600.5856(d). Further, this Court's decision in *Ousley v McLaren*, 264 Mich

App 486; 691 NW2d 817 (2004), applied *Waltz* retroactively. Hurley Medical Center concurred in Dr. Inba-Vazhvu's motion.[1]

Plaintiff sought to distinguish *Waltz* and *Ousley* on the basis that the plaintiffs in those cases had failed to bring the action within the three-year ceiling of the wrongful death saving period, MCL 600.5852, whereas plaintiff had brought this action within that period. The circuit court granted the motion for summary disposition pursuant to MCR 2.116(C)(7), and plaintiff reasserts her arguments on appeal.

II

Whether a period of limitations applies in particular circumstances and whether the doctrine of equitable or judicial tolling should apply given the facts of this case constitute legal questions that this Court considers de novo. *Bryant v Oakpointe Villa Nursing Centre, Inc,* 471 Mich 411, 418-419, 432-433; 684 NW2d 864 (2004); *Detroit v 19675 Hasse,* 258 Mich App 438, 444-445; 671 NW2d 150 (2003).

We first observe that a panel of this Court has rejected the distinction plaintiff seeks to draw between the *Waltz* and *Ousley* cases and this case, which distinction is based on the distinction between the two-year and three-year provisions of the saving statute. In *Farley v Advanced Cardiovascular Health Specialists, PC,* 266 Mich App 566, 574-575; 703 NW2d 115 (2005), the Court stated:

> Farley argues that neither *Waltz* nor *Ousley* addressed whether a suit is timely when, as here, the personal representative filed suit within three years after the two-

---

[1] In September 2002, pursuant to the parties' stipulation, the circuit court dismissed Dr. Kenneth Jordan from the action.

year medical malpractice limitations period (MCL 600.5805) had expired, and therefore those cases do not determine the outcome here. It is true that, in *Waltz* and *Ousley*, the personal representative filed suit after both the two-year malpractice limitations period (MCL 600.5805) and the three-year ceiling set forth in the wrongful death saving provision (MCL 600.5852) had passed. However, this factual distinction makes no difference. As noted, the three-year ceiling in the wrongful death saving provision is not an independent period in which to file suit: it is only a limitation on the two-year saving provision itself.[2]

Thus, plaintiff's effort to distinguish *Waltz* on this basis must fail.

### III

Plaintiff asserts that the Supreme Court's holding in *Waltz*, decided on April 14, 2004, has no applicability to this case because the relevant procedural events occurred before the issuance of the *Waltz* decision. In *Ousley, supra* at 486, this Court rejected the plaintiff's argument that *Waltz* should be applied only prospectively. However, in *Mullins v St Joseph Mercy Hosp*, 269 Mich App 586, 591; 711 NW2d 448 (2006), a panel of this Court declared a conflict with *Ousley* pursuant to MCR 7.215(J), and this Court subsequently convened a spe-

---

[2] The *Farley* Court also stated:

We note that the three-year ceiling in this provision does not establish an independent period during which a personal representative may bring suit. Specifically, it does not authorize a personal representative to file suit at any time within three years after the period of limitations has run. Rather, the three-year ceiling limits the two-year saving period to those cases brought within three years of when the malpractice limitations period expired. As a result, while the three-year ceiling can *shorten* the two-year window during which a personal representative may file suit, it cannot *lengthen* it. [*Farley, supra* at 573 n 16 (emphasis in original).]

cial panel to resolve the conflict. The outcome of that case will determine this issue.[3]

## IV

Plaintiff also argues that if defendants' and *Farley's* interpretations of *Waltz* are correct, equity demands the application of judicial tolling because plaintiff was required to file the notice of intent under MCL 600. 2912 and she relied on *Omelenchuk v Warren*, 461 Mich 567; 609 NW2d 177 (2000), clarified and overruled in part in *Waltz, supra* at 652-655, in filing her claim when she did. In *Mazumder v Univ of Michigan Bd of Regents*, 270 Mich App 42; 715 NW2d 96 (2006), a panel of this Court agreed that, separate and apart from the pure retroactivity question decided in *Ousley,* the doctrine of equitable or judicial tolling applies in situations such as that involved here. Because this issue is dispositive regardless of the decision of the conflict panel, we reverse and remand for further proceedings.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

O'CONNELL, J. (*concurring in result only*). I agree with the majority's result, but I cannot adopt its reasoning. Rather than apply the doctrine of judicial estoppel to reach the right result, I would, if writing on a clean slate, apply the rule set forth in *Pohutski v City of Allen Park*, 465 Mich 675, 695-696; 641 NW2d 219 (2002), and I urge the Michigan Supreme Court to do the same. In *Pohutski*, the Court held that the general rule is that

---

[3] We do not reverse on the basis of the rule set forth in *Pohutski v City of Allen Park*, 465 Mich 675, 695-696; 641 NW2d 219 (2002), as suggested by Judge O'CONNELL in his concurring opinion, because this is the precise issue to be determined by the conflict panel.

judicial decisions are given full retroactive effect, however, "a more flexible approach is warranted where injustice might result from full retroactivity." *Id*. at 696.

As explained in my dissent in *McLean v McElhaney*, 269 Mich App 196, 204-208; 711 NW2d 775 (2005), and my majority opinion in *Mullins v St Joseph Mercy Hosp*, 269 Mich App 586; 711 NW2d 448 (2006), I am of the opinion that injustice results from the retroactive application of *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004). Therefore, I urge our Supreme Court to apply the flexible approach it crafted in *Pohutski* to the rule it established in *Waltz*.

By means of illustration, in *Hardy v Maxheimer*, 429 Mich 422, 449; 416 NW2d 299 (1987),[1] Chief Justice RILEY, writing in dissent, applied a textualist's approach to the wrongful death statute and concluded that "a cause of action under the wrongful death statute accrues at death." She explained that "a wrongful death action does not survive death, but arises because of it." *Id*. In accordance with this reasoning, she rejected the majority's conclusion that the saving provision, MCL 600.5852, applied to wrongful death actions. She disagreed with the majority, which she said held that the Legislature intended for MCL 600.5852 to "extend the statute of limitations in every wrongful death action. . . ." *Id*. at 441.

The majority, however, expressly rejected Justice RILEY's interpretation of MCL 600.5852. It responded that the dissent, by refusing to apply the time extensions provided in MCL 600.5852 to the newly unified wrongful death action, "makes a nullity of the only statute specifically placing a *limitation* on actions for

---

[1] The *Hardy* decision is evidence that the confusion on the part of the bench and bar concerning the application of the saving provision is not of recent origin.

wrongful death." *Hardy, supra* at 439 n 16 (emphasis added). The Court added, "We are not willing to disregard the precedent of our own Court and the precise wording of § 2921 providing that all actions are survival actions in order to provide a more uniform statute of limitations. That is the Legislature's work." *Id.* at 439-440 n 16. It concluded that the wrongful death suit was timely, "because the personal representatives brought the action within two years of their appointment and within three years after the *initial period of limitation* had run." *Id.* at 441 (emphasis added). From this language it is clear that both sides of the issue in *Hardy* strictly interpreted the statute and agreed that if it applied to wrongful death actions at all, it extended the period of limitations on the underlying conduct and, essentially, operated as a new statute of limitations for wrongful death actions.

Therefore, it could be argued that MCL 600.5852 doubles as both a saving provision for the medical malpractice action and, ultimately, as a statute of limitations or repose for the wrongful death action. Cf. *Ostroth v Warren Regency, GP, LLC*, 474 Mich 36, 46; 709 NW2d 589 (2006) (holding that MCL 600.5839 is both a statute of limitations and a statute of repose). Although this argument appears to undermine the premise in *Waltz*, it actually complements *Waltz* by raising a legal issue that had previously gone unnoticed, an issue that fits squarely within the parameters of the rule *Waltz* recognized.

Adding to the current legal confusion, however, is the fact that in *Omelenchuk v City of Warren*, 461 Mich 567; 609 NW2d 177 (2000), the Supreme Court applied the tolling provision to the saving provision in precise terms that indicated that the two statutes did operate together.

*Omelenchuk's* presentation of MCL 600.5805(6)[2] and 600.5852 in tandem as alternative periods of limitations, and especially its explicit use of a date stemming from the latter in applying the tolling provision of MCL 600.5856(d), in my opinion, can only be interpreted as indicating that the tolling statute applies to the saving provision. Before *Waltz* was decided, a malpractice attorney seeking guidance on the operation of MCL 600.5852 and 600.5856(d) could hardly do other than consult *Omelenchuk* and conclude from it that the latter applied to the former.

In my opinion, the level of confusion and imprecise language surrounding this issue justifies the application of the flexible approach adopted in *Pohutski*.

---

[2] *Omelenchuk* refers to this provision as subsection 4, reflecting the designation in effect at the time for claims covering malpractice. *Omelenchuk, supra* at 569 n 3.